IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MARIA RUHTENBERG,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF IOWA and JEFF WRIGHT, in his individual capacity,<br><br>Defendants. | Case No. 4:250-cv-473<br><br>**COMPLAINT**<br>**and**<br>**JURY DEMAND** |

COMES NOW Plaintiff Maria Ruhtenberg, and for her cause of action against Defendants states the following:

*"Whoever would overthrow the liberty of a nation must begin by subduing the freeness of speech."*

Silence Dogood, pseudonym of Benjamin Franklin.

## INTRODUCTION

1. This is a civil action under 42 U.S.C. § 1983 stemming from Defendants' violations of Plaintiff's rights guaranteed by the First Amendment to the United States Constitution.

## PARTIES

2. Plaintiff Maria Ruhtenberg ("Maria") is a resident of Polk County, Iowa.

3. The State of Iowa does business in Polk County, Iowa.

4. Upon information and belief, Defendant Jeff Wright is a resident of Polk County, Iowa.

5. The acts of which Plaintiff complains occurred in Polk County, Iowa.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including the First Amendment and 42 U.S.C. § 1983.

1

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because the claims present federal questions and seek to redress the deprivation of rights secured by the Constitution and laws of the United States of America.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred within this district, and 28 U.S.C. § 1391(b)(1) because the Defendants reside in this district.

## FACTUAL BACKGROUND

9. On October 1, 2010, the State hired Plaintiff Maria Ruhtenberg as a trial attorney for the Story County division of the Public Defender's office.

10. In May 2013, Maria became an Assistant Appellate Defender in Des Moines.

11. Throughout her employment, Maria's performance reviews indicated she met or exceeded expectations.

12. Defendants never formally disciplined Maria until September 15, 2025.

13. On the afternoon of September 10, 2025, Maria argued a case before the Iowa Supreme Court.

14. Later that day, Maria saw the news about the killing of conservative activist Charlie Kirk.

15. Maria posted on her private Facebook page about the killing of Mr. Kirk.

16. Maria also engaged with other citizens on Facebook about Mr. Kirk's political views through her own post and by commenting on others' posts.

17. In her speech, Maria indicated her disagreement with the views Mr. Kirk had expressed about the Second Amendment.

18. Maria also stated Mr. Kirk's killer should go to prison.

19. Maria made her speech as a private citizen.

20. Maria did not make her speech during work hours.

21. Maria did not use State property to make her speech.

22. Maria's Facebook profile did not identify her as an employee of the Public Defender's Office.

23. The subject of Maria's Facebook posts was a matter of public concern.

24. On Thursday, September 11, Maria deactivated her Facebook account.

25. Maria worked all day on September 11 and 12 without issue.

26. Around 3:00 on Monday, September 15, Maria's boss, Appellate Defender Martha Lucey, told Maria to join a video conference with First Assistant Public Defender Kurt Swaim and Waterloo Public Defender Office Supervisor Aaron Hawbaker.

27. Mr. Swaim told Maria someone had reported Maria's speech and sent in screenshots of some of her Facebook posts and comments.

28. Mr. Swaim did not identify who sent the screenshots.

29. For approximately 30 minutes, Mr. Swaim questioned Maria about the content of her private online speech.

30. At the conclusion of the questioning, Mr. Swaim and Mr. Hawbaker said they were simply investigating facts and that they would not be part of any decision about what would happen next.

31. Approximately one hour later, Ms. Lucey told Maria she'd been fired and asked her to return all state-owned equipment to the office that afternoon.

32. When Maria arrived, Ms. Lucey handed Maria a termination letter signed by State Public Defender Jeff Wright.

33. The letter said the State was firing Maria due to the statements she posted on social media.

34. Defendants particularly focused on two statements Maria made online: "live by the sword, die by the sword" and "you reap what you sow."

35. Both quotations are from the Bible.

36. Defendants did not fire Maria for any reason other than her statements posted to social media.

37. Maria's speech did not impede the performance of her job duties.

38. Maria's speech did not impair any relations between her coworkers or cause turmoil within the office.

39. Maria's speech did not interfere with the regular operation of the Public Defender's Office.

40. Indeed, Maria had defended indigent Iowans for nearly 15 years, even if their beliefs ran counter to her own.

41. Maria appealed her termination through the Department of Inspections of Appeals and Licensing.

42. On November 17, 2025, the Department issued an order, finding Defendants failed to prove that its interests in the efficient provision of public services outweighed Maria's interests in privately commenting on a matter of public concern.

43. The Department ordered Defendants to immediately reinstate Maria.

44. Upon information and belief, Defendants' retaliation against Maria was part of a broader attempt by the State to suppress and punish free speech on the issues surrounding Charlie Kirk and his death.

45. Several Iowa legislators and Iowa Governor Kim Reynolds publicly called for public employees to be fired based on the content of the employees' speech about Mr. Kirk.

46. At least one Iowa legislator stated that he was reporting public employees' Facebook posts about Mr. Kirk to their employers "as directed by the Speaker of the Iowa House."

47. Defendants' actions in repressing and openly threatening the free speech rights of public employees, including Maria's, show clear intent to punish public employees for engaging in freedom of speech and expression.

48. Such deliberate and intentional actions are repugnant to the First Amendment and echo the political repression of the age of McCarthyism, when manufactured lists of "subversives" were used to destroy the lives and reputations of people based on their political views.

## COUNT I
## FREEDOM OF SPEECH VIOLATION
## RETALIATION UNDER 42 U.S.C. SECTION 1983

49. Plaintiff repleads paragraphs 1 through 48 as if fully set forth herein.

50. The First Amendment to the United States Constitution guarantees the right to freedom of speech.

51. On September 10, 2025, Plaintiff engaged in speech protected by the First Amendment of the Constitution by speaking as a private citizen on a matter of public concern on Facebook.

52. Plaintiff's speech did not incite imminent lawless action.

53. Plaintiff's speech did not include threats of violence or bodily harm.

54. Defendants took adverse action against Plaintiff by firing her.

55. Defendants fired Plaintiff solely because of the content of her speech.

56. Defendants acted under color of law.

57. In firing Maria for the content of her speech, Defendants used government power to punish someone for expressing their beliefs on matters of public concern.

58. Defendants did not tell Maria that her speech impaired discipline by superiors.

59. Maria's speech did not impair discipline by superiors.

60. Defendants did not tell Maria that her speech impaired harmony among her coworkers.

61. Maria's speech did not impair harmony among her coworkers.

62. Defendants did not tell Maria that her speech had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary.

63. Maria's speech did not have a detrimental impact on close working relationships for which personal loyalty and confidence are necessary.

64. Defendants' retaliation would deter a person of ordinary firmness from exercising their First Amendment rights.

65. Under Iowa Law, the State Public Defender possesses the authority to terminate Assistant Public Defenders.

66. Defendant Jeff Wright acted with malice or reckless indifference to Plaintiff's federally protected rights.

67. As a result of Defendants' acts, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to mental and emotional distress, fear, anguish, humiliation, intimidation, damage to her professional reputation, betrayal, anxiety, embarrassment, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for emotional distress damages, for punitive damages against Defendant Jeff Wright in his individual capacity in an amount sufficient to punish and deter him and others from engaging in similar conduct in the future, for prejudgment and post judgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances.

## JURY TRIAL DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury on all matters raised in this Complaint.

        /s/ David Albrecht
FIEDLER LAW FIRM, P.L.C.
David Albrecht AT0012635
david@employmentlawiowa.com
Madison Fiedler-Carlson AT0013712
madison@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF